## LATHAM v INDUSTRIAL COMMISSION

Ohio Appeals, 2nd Dist, Greene Co

No 439. Decided July 20, 1938

Boyd & Boyd, Columbus, for plaintiff-appellee.

Herbert S. Duffy, Attorney General, Columbus, Eugene Carlin, Asst. Attorney General, Columbus, C. L. Hawthorne, Asst. At-

torney General, Columbus, for defendant-appellant.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined as an error proceeding by virtue of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Greene County, Ohio.

The plaintiff, on or about the 8th day of April 1935, was a Civil Service employee and engaged as a state examiner for the auditor of state, being classified as Grade 3A. On said date and previous thereto, Mr. Joseph Tracy was duly elected and acting auditor of state. The immediate superior of Mr. Earl C. Latham was H. D. Defanbacker, who held the position of deputy inspector and supervisor of the Bureau of Inspection, supervisor of Public Offices, auditor of state department.

Plaintiff, through his petition, alleges that on the 8th day of April, 1935, while engaged in the usual course of his employment, viz., driving his automobile from the city of Columbus, Ohio, the central office of the said Bureau of Inspection, to Middletown, Ohio, where plaintiff was to assist in the audit of public records, plaintiff's automobile skidded off the highway, through which plaintiff claims to have received serious injuries, the nature and extent of which are fully set out in the petition. It is further alleged in the petition that the plaintiff and the State of Ohio were fully insured under the provisions of the Workmen's Compensation Law.

It is also alleged that plaintiff duly filed his application for compensation, which claim was denied, after which application for rehearing was duly made and on the 27th day of July, 1937 the Industrial Commission made the following order:

"The the claim be disallowed for the reason that the proof on file fails to show claimant's disability as the result of the injury sustained in the course of and arising out of employment."

Thereafter, an appeal was duly taken to the Common Pleas Court and upon trial before a jury in that court, a verdict was returned in favor of the plaintiff.

Motion for new trial was duly filed, overruled and judgment entered on the verdict.

Notice of appeal was filed within the required time, as stipulated under the Code.

Appellants filed the following assignments of error, numbered 1 to 4, inclusive:

"1. The verdict is contrary to law and contrary to the evidence.

"2. The court erred in overruling defendant's motion for a directed verdict in its favor, for the reason that the evidence adduced did not show that Earl C. Latham sustained a compensable injury within the meaning of the Workmen's Compensation Law.

"3. The court erred in giving the requested charge to the jury, offered by plaintiff, to which the defendant' objected.

"4. The court erred in its general charge to the jury."

Defendant in its answer admitted that on the said April 8th, 1935, the plaintiff was in the employ of the State of Ohio; that on said date plaintiff was injured in an automobile accident in Greene County and subsequent thereto filed with the defendant an application for compensation from the state insurance fund, on which proceedings were had, as set forth in the petition.

Defendant denied each and every other allegation contained in plaintiff's petition.

From the record and briefs we ascertain that the sole and only question at issue is whether or not plaintiff's trip from Columbus to Middletown was in the course of his employment.

Plaintiff testified that State Auditor Joseph Tracy and also his immediate superior, H. D. Defanbacker, ordered him to report at Middletown to engage in his accounting work under the supervision of Ernest E. Erb, who was also a state examiner of this same bureau of inspection. Prior to April 1, 1935 plaintiff had been engaged in his work at Mansfield, Ohio, and on said date he left Mansfield at the suggestion of his superior in that district, with directions to report to the office in Columbus. Thereafter he made daily contacts with the auditor's office, until and including the said 8th day of April, 1935, when he claims to have received his orders to proceed to Middletown.

It is the contention of the defendant and was testified to by State Auditor Tracy and the said H. D. Defenbacker, that orders were not given to plaintiff to go to Middletown, but that the plaintiff was told by them, either or both, that an assignment would be given to him if he could contact and secure the consent of any examiner of a higher grade to take him on and give him work. The claim is further made that the contemplated trip to Middletown was on plaintiff's own initiative and not through orders of any of his superiors and hence at the time of his injury he was not in the course of any employment for the department.

This presents a clean-cut conflict in the testimony and being a question for the jury, we are unwilling to say that the finding of the jury was contrary to the manifest weight of the evidence. By reason of this determination assignment of errors Nos. 1 and 2 must be resolved against the appellant.

Assignment of error No. 3 complains that the court erred in giving a requested charge to the jury, to which defendant objected.

We fail to find in our examination of the record that any request to charge was made and hence assignment No. 3 is not well taken.

Assignment No. 4 claims the court erred in its general charge to the jury. The particular part of the charge objected to is set out in the brief and is as follows:

"There has been some argument and considerable evidence introduced about some alleged suspension from his position about this time. There is a provision in the Civil Service Law by which any head of a department may suspend someone who is under him from his duties, but the law provides that order of suspension must be followed by charges on which the suspension is based and it further provides for a procedure by which the Civil Service Commission must hear those charges. It is not necessary for the court to go any further into the law as to that, but that is the provision of the law with reference to suspension, and trial of one under Civil Service. If you find from this evidence that this alleged suspension was a mere technical matter originated in this department for the purpose of avoiding paying these employees when they were not engaged, never followed by charges, never any notice thereof given by employees, and as soon as employment was found immediately suspended and never amounted to real suspension or real trial, the court says to you that is no suspension at all, and the employee is in the employ of the state all the time just the same as he was before or afterwards."

It is probably true that this issue was improperly in the case under the state of the pleadings but evidence was introduced on both sides relative thereto without objection and we think under that situation the court was warranted in making the charge in explanation to the jury. This question was injected into the case in the following manner:

Counsel for plaintiff we think improperly anticipated a defense and interrogated plaintiff as to whether or not he was ever informed of any suspension or had any knowledge of any communication having been made from the department of the auditor of state to the Civil Service Commission, suspending the plaintiff. Plaintiff answered that he was not given any notice of suspension, nor did he know of any such communication until the time of hearing before the Civil Service Commission. As heretofore stated, this evidence went in without objection.

Defendant placed H. D. Defenbacker on the stand and during the course of his interrogation, counsel for defendant made inquiry relative to this suspension order. He answered thereto as follows:

"A. You know Civil Service have always held that examiners under Civil Service are entitled to pay from January 1 to December 31, and we have to do what they say, and if a man is not working why we can file claim for his compensation against the state. Therefore, we issue a negative suspension when we don't have an assignment for a man if he don't request leave of absence so he could not be paid when he was not working. That was done frequently. It was not a suspension.

"Q. It was not a suspension?

"A. No, it was that kind of a suspension, merely to save the state from paying compensation when he was not working, and the minute he applied for leave of absence we withdrew the suspension."

Judgment affirmed and cause remanded.

HORNBECK and GIEGER, JJ, concur.